UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BERGER MONTAGUE PC,

                Movant,

v.

ROBINHOOD FINANCIAL, LLC,

                Respondent.

Case No.: 1:23-mc-75

**MEMORANDUM IN SUPPORT OF MOTION TO QUASH SUBPOENA**

## **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................1

II.   UNIDENTIFIED RESPONDENTS HAVE STANDING TO MOVE TO QUASH THE SUBPOENA ................................................................................................2

III.  FACTUAL BACKGROUND ..............................................................................2

IV.  LEGAL STANDARD ........................................................................................5

V.   THE SUBPOENA MUST BE QUASHED BECAUSE IT SEEKS PRIVILEGED MATTERS ........................................................................................................6

    A.    The Subpoena Seeks Unidentified Respondents' Attorney-Client Privileged Communications ........................................................................6

        (1)    The communications were between a prospective client and counsel for the purpose of obtaining legal advice. ...............................................7

        (2)    The communications were intended to be and were in fact kept confidential. ........................................................................................10

    B.    Unidentified Respondents' Names and Contact Information Are Privileged. ........11

    C.    The Subpoena Seeks Information Protected from Disclosure by the Attorney Work Product Privilege ...............................................................12

VI.  THE SUBPOENA MUST BE QUASHED BECAUSE IT SEEKS DISCLOSURE OF OTHER PROTECTED MATTERS ....................................................................16

VII. CONCLUSION ...............................................................................................18

# **TABLE OF AUTHORITIES**

Cases

*Barton v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 410 F.3d 1104 (9th Cir. 2005) ............ 7-8, 9, 10, 14

*Bauman v. Jacobs Suchard, Inc.*, 136 F.R.D. 460 (N.D. Ill. 1990) ................................ 8

*Bennett Silvershein Associates v. Furman*, 776 F.Supp. 800 (S.D.N.Y.1991) ................ 8

*Bhatt v. Lalit Patel Physician P.C.*, 2020 WL 13048694 (E.D.N.Y. Oct. 19, 2020) .......... 17

*Bogard Constr., Inc. v. Oil Price Info. Serv., LLC*, 604 F. Supp. 3d 895 (N.D. Cal. 2022) .......... 5

*Bolding v. Banner Bank*, 2021 WL 1530998 (W.D. Wash. Apr. 19, 2021) .................... 7

*In re Cal. Pub. Utils. Comm'n*, 892 F.2d 778 (9th Cir. 1989) ................................ 2

*Coe v. Cross-Lines Ret. Ctr., Inc.*, 2022 WL 17338289 (D. Kan. Nov. 30, 2022) ............ 7

*Connelly v. Dun & Bradstreet*, 96 F.R.D. 339 (D. Mass. 1982) .............................. 9

*Conti v. Doe*, 2019 WL 5198882 (S.D.N.Y. Oct. 1, 2019) .................................... 5

*De La O v. Arnold-Williams*, 2007 WL 9717727 (E.D. Wash. March 8, 2007) .............. 7

*Don v. Unum Life Ins. Co. of Am.*, 2014 WL 12603207 (C.D. Cal. Nov. 4, 2014) .......... 9, 14

*Elliott Assocs., L.P. v. Republic of Peru*, 176 F.R.D. 93 (S.D.N.Y. 1997) .................. 6

*Ferruza v. MTI Tech.*, 2002 WL 32344347 (C.D. Cal. June 13, 2002) ........................ 15

*First Hawaiian Bank v. Russell & Volkening, Inc.*, 861 F. Supp. 233 (S.D.N.Y. 1994) ...... 8

*Gates v. Rohm & Haas Co.*, Civ. A. No. 06-1743, 2006 WL 3420591 (E.D. Pa. Nov. 22, 2006) .. 8

*Grinnell Corp. v. ITT Corp.*, 222 F.R.D. 74 (S.D.N.Y. 2003) ................................ 12

*Herbert v. Haytaian*, 678 A.2d 1183 (N.J. Super. Ct. App. Div. 1996) ...................... 7

*Hickman v. Taylor*, 329 U.S. 495 (1947) ................................................... 14

*Jordan v. Comm'r, Mississippi Dep't of Corr.*, 947 F.3d 1322 (11th Cir. 2020) ............ 16

*Kelwin Inkwel, LLC v. PNC Merch. Servs. Co., L.P.*, 2020 WL 13077200 (E.D.N.Y. June 5, 2020) ...................................................................................... 15

*McGrath v. Nassau Cnty. Health Care Corp.*, 204 F.R.D. 240 (E.D.N.Y. 2001) ............ 13, 15

*Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009) .................................... 18

*New York Times Co. v. United States Dep't of Just.*, 939 F.3d 479 (2d Cir. 2019) .......... 18

ii

*Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923 (7th Cir. 2004) ............................................ 17

*Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, 341 F.R.D. 10 (S.D.N.Y. 2022) ..... 13

*Rosso, Johnson, Rosso & Ebersold v. Superior Court*, 191 Cal. App. 3d 1514 (1987) .. 8, 9, 11, 12

*Samad Bros. v. Bokara Rug Co. Inc*., No. 09 CIV. 5843 JFK KNF, 2010 WL 5094344 (S.D.N.Y.

Nov. 30, 2010) ...................................................................................................................... 2

*Seebeck v. Gen. Motors Corp.*, 1996 WL 742914 (N.D. Ga. May 17, 1996) ........................... 15

*Shelton v. Am. Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986) ............................................... 16

*Smith-Brown v. Ulta Beauty, Inc.*, 2019 WL 2644243 (N.D. Ill. June 27, 2019) ...................... 15

*S. California Hous. Rts. Ctr. v. K3 Holdings, LLC*, 2022 WL 17333390 (C.D. Cal. Oct. 18, 2022)

.............................................................................................................................................. 17

*State v. Bean*, 239 N.W.2d 556 (Iowa 1976) ....................................................................... 11

*Steele v. CVS Pharmacy, Inc.*, 2016 WL 1659317 (S.D.N.Y. Apr. 18, 2016) ........................... 15

*Tartaglia v. Paul Revere Life Ins. Co.*, 948 F. Supp. 325 (S.D.N.Y. 1996) ........................... 5, 6

*U.S. v. Constr. Prod. Rsch.*, *Inc*., 73 F.3d 464 (2d Cir. 1996) ............................................... 7

*United States v. Vepuri*, 2022 WL 3648184 (E.D. Pa. Aug. 24, 2022) ................................... 15

*U.S. v. Yonkers Bd. Of Educ.*, 946 F.2d 180 (2d Cir. 1991) ................................................. 16

*U.S.  Sec. & Exch. Comm'n v. Collector's Coffee Inc.*, 337 F.R.D. 70 (S.D.N.Y. 2020 ........... 13

*Vodak v. City of Chicago*, 2004 WL 783051 (N.D. Ill. Jan. 16, 2004) ................................ 7, 11

Rules & Statutes

Fed. R. Civ. P. 26 ............................................................................................................... 13

Fed. R. Civ. P. 45 ......................................................................................... 2, 5, 6, 16, 17

Fed. R. Evid. 501 ................................................................................................................. 5

N.J. Stat. § 2A:84A-20(3) .................................................................................................... 7

Wash. RPC 1.18 ................................................................................................................. 17

Wash. Const. art. I, § 7 ...................................................................................................... 17

Other Authority

16 A.L.R.3d 1047, 1053 ...................................................................................................... 11

81 Am.Jur.2d, Witnesses, § 213 .................................................................. 11

## I.      INTRODUCTION

On March 2, 2023, Robinhood Financial LLC ("Robinhood") subpoenaed Season4, LLC, the operator of ClassAction.org, for documents related to a web posting Season4 posted on its website on behalf of Movant Berger Montague PC ("Berger"). (Ex. 1 attached to the Declaration of E. Michelle Drake ("Drake Decl.") (the "Subpoena")). The posting was intended to identify prospective clients for Berger in the State of Washington related to a scam Robinhood invented to pay and enable its users to spam their contacts with text message advertisements asking those contacts to "join Robinhood." Cooper Moore and Andrew Gillette, Plaintiffs in the underlying action *Moore, et al. v. Robinhood Financial, LLC*, No. 2:21-cv-01571-BJR (W.D. Wash.) ("Plaintiffs"), and other consumers ("Unidentified Respondents"), viewed the web posting and contacted Berger through a form provided on the website, providing information for the purpose of obtaining legal advice about a potential claim against Robinhood. Plaintiffs subsequently retained Berger to assert a legal claim under Washington law against Robinhood related to spam text messages they received and are now the named plaintiffs in the underlying putative class action lawsuit that gave rise to the Subpoena.

The Subpoena—directed by Robinhood at Berger's service provider—improperly seeks the content of the communications that Unidentified Respondents sent to an attorney for the purpose of obtaining legal advice through the website and Berger's communications with Season4 which reflect its assessment and analysis of Plaintiffs' and Unidentified Respondents' claims against Robinhood. The Subpoena thus invades (i) Unidentified Respondents' interests in the confidentiality of their attorney-client communications; (ii) Unidentified Respondents' right to

privacy; and (ii)Berger's attorney work product.[1] Because the Subpoena requires disclosure of privileged or other protected matter, Rule 45 requires the Court to quash the Subpoena. Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv).

## II.   UNIDENTIFIED RESPONDENTS HAVE STANDING TO MOVE TO QUASH THE SUBPOENA.

The Subpoena seeks Unidentified Respondents' attorney-client privileged communications with counsel, documents that would identify Unidentified Respondents, and attorney work product. (Ex. 1.) Berger is moving on behalf of Unidentified Respondents to protect the confidentiality of those privileged communications and the privacy rights of Unidentified Respondents. *Samad Bros. v. Bokara Rug Co. Inc*., No. 09 CIV. 5843 JFK KNF, 2010 WL 5094344, at *2 (S.D.N.Y. Nov. 30, 2010) ("the claim of privilege or right must be personal to the movant, not to the non-party witness on whom the subpoena was served"). Berger is also moving on its own behalf to protect its interests in the confidentiality of its attorney work product. *See In re Cal. Pub. Utils. Comm'n*, 892 F.2d 778, 781 (9th Cir. 1989) (the rule governing work product protection "limits its protection to one who is a party (or a party's representative) to the litigation in which discovery is sought").

## III.   FACTUAL BACKGROUND.

Season4 provides services to law firms that connect those law firms with individuals who have experienced potential corporate misconduct and are seeking legal advice. Season4 has the technical expertise and infrastructure necessary to perform this service on behalf of law firms and the consumers who benefit from obtaining legal advice. In May 2021, Berger requested that Season4 publish information regarding an investigation it was conducting to identify consumers

---

[1] Plaintiffs are separately moving to quash the Subpoena to protect their interests in the confidentiality of their attorney-client communications and attorney work product.

who received unsolicited marketing text messages that Robinhood caused its users to send through a "refer-a-friend" program, in violation of Washington law. Season4 published a webpage on ClassAction.org regarding the investigation and for the purpose of connecting Berger with prospective clients. (Exs. 2 & 3, at Ex. A.)

Both Plaintiff Moore and Plaintiff Gillette viewed the webpage regarding the Robinhood investigation on ClassAction.org. (Exs. 2 ¶ 2 & 3 ¶ 2.) They both filled out the form on the page for the purpose of obtaining legal advice regarding a potential legal claim against Robinhood related to spam text messages they received and to retain counsel for any potential legal claim. (Exs. 2 ¶ 3 & 3 ¶ 3.) They each expected that the information they provided would be sent to a lawyer and that the communication would be kept confidential. (Exs. 2 ¶ 4 & 3 ¶ 4.)

Plaintiffs' belief that their communications sent to Berger through ClassAction.org were confidential is supported by the commitments Season4 makes to consumers on the website. For example, in June 2021 the "About Us" page on ClassAction.org featured an "FAQ" which asked "Is my information kept private?"[2] The answer provided stated: "The only thing we will do with the information you provide us is send it to the attorneys we work with so that you can take legal action or get help. *Your information will never go to any other third party.*" (Emphasis added). The ClassAction.org Terms of Use also provide that "This Site forwards information you provide in connection with S4 Content to the lawyers, law firms, legal financial service providers, or other

---

[2] Wayback Machine, ClassAction.org, About Us (June 1, 2021), https://web.archive.org/web/20210601040007/https://www.classaction.org/about-us.

legal service providers as set forth in these Terms of Use and *keeps this information confidential*." This promise was the same in May 2021.[34]

Unidentified Respondents viewed the same webpage, with the same terms, and provided their names and contact information, as well as details regarding their claims, to Berger for the purpose of obtaining legal advice regarding a possible claim against Robinhood related to spam refer-a-friend text messages. Some of the Unidentified Respondents retained Berger but ultimately did not pursue a claim based on consultation with counsel, while others determined not to pursue a claim or retain Berger after consulting with Berger. (Drake Decl. ¶ 6.)

Berger ultimately filed a complaint naming Plaintiff Moore against Robinhood in the Northern District of California on August 9, 2021. The case was transferred to the Western District of Washington and Berger filed the operative First Amended Complaint against Robinhood naming Plaintiff Moore and Plaintiff Gillette on February 9, 2022. *Moore*, ECF No. 54 ("FAC"). The Court denied Robinhood's Motion to Dismiss the First Amended Complaint on August 3, 2022. *Moore*, ECF No. 63.

On March 2, 2023, Robinhood issued the Subpoena to Season4 seeking, inter alia, the Unidentified Respondents' communications with Berger submitted through ClassAction.org (Ex. 1, Request No. 2.a) and Berger's communications with Season4 regarding the webpage published by Season4 or Plaintiffs' lawsuit against Robinhood (*id.*, Request Nos. 1, 2.b). The Subpoena lists New York, NY as the place of compliance and March 21, 2023 as the date of compliance. (*Id.* at 7.) Should the Subpoena not be quashed, Season4 would be compelled to produce Unidentified Respondents' communications with Berger and communications between Berger and Season4

---

[3] ClassAction.org, Terms of Use § 9, https://www.classaction.org/terms-of-use (emphasis added).
[4] *Compare* Wayback Machine, ClassAction.org, Terms of Use § 9 (May 11, 2021), https://web.archive.org/web/20210511042232/https://www.classaction.org/terms-of-use.

reflecting Berger's assessment of Unidentified Respondents' and Plaintiffs' claims. Unidentified Respondents' communications with its counsel or prospective counsel, Berger, are and should remain, privileged.

## IV.    LEGAL STANDARD.

Rule 45 provides that a court "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies" or that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv). Motions to quash are to be decided by "the court for the district where compliance is required[.]" Fed. R. Civ. P. 45(d)(3).

In diversity actions, courts "must look to state law to determine questions of privilege." *Conti v. Doe*, 2019 WL 5198882, at *2 (S.D.N.Y. Oct. 1, 2019); *accord* Fed. R. Evid. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."). Plaintiffs' claims in the underlying action were brought based on diversity jurisdiction, FAC ¶ 12, and accordingly state law governs determinations of privilege.

To resolve which state's laws on privilege apply, the Court must first look to New York's choice of law rules. *See Tartaglia v. Paul Revere Life Ins. Co.*, 948 F. Supp. 325, 326 (S.D.N.Y. 1996) (explaining that "[f]ederal district courts sitting in diversity cases apply the conflict of laws rules prevailing in the state in which they are situated," and applying New York's choice of law rules to determine which state's privilege laws apply to motion to compel brought under Rule 45 where underlying action was a diversity case brought in the U.S. District Court for the Northern District of Ohio); *accord Bogard Constr., Inc. v. Oil Price Info. Serv., LLC*, 604 F. Supp. 3d 895, 900–01 (N.D. Cal. 2022) (applying Maryland choice of law rules to determine which state's law governs privilege questions because Maryland was the "original forum for this Rule 45 subpoena compliance proceeding" prior to being transferred pursuant to Fed. R. Civ. P. 45(f)).

Under New York's choice of law rules regarding privilege, New York courts ordinarily "apply the law of the place where the evidence in question will be introduced at trial, or the location of the discovery proceeding itself." *Elliott Assocs., L.P. v. Republic of Peru*, 176 F.R.D. 93, 96 (S.D.N.Y. 1997); *accord Tartaglia*, 948 F. Supp. at 326 ("New York choice of law gives controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation."). Here, Plaintiffs are located in Washington, Plaintiffs' claims are based on violations of Washington state law, the Unidentified Respondents that communicated with Season 4 were primarily located in Washington, and the relevant advertisement placed by Season 4 on behalf of Berger Montague was directed at "Washington consumers" that received illegal promotional text messages from Robinhood "in violation of Washington's Consumer Protection Act." (*See* Ex. 1, at Ex. 1.) Accordingly, Washington likely has the "greatest concern," and thus Washington state law should govern determinations of privilege.

However, the Court need not engage in lengthy conflict-of-law analysis because there is no conflict. Regardless of which state's substantive law applies, the attorney-client privilege extends to Season4, which was acting as an agent for Berger by finding and connecting prospective clients seeking legal advice with Berger.

## V.      THE SUBPOENA MUST BE QUASHED BECAUSE IT SEEKS PRIVILEGED MATTERS.

### A.      The Subpoena Seeks Unidentified Respondents' Attorney-Client Privileged Communications.

The Subpoena seeks Unidentified Respondents' confidential and privileged communications with Berger and therefore "must" be quashed. Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv). The pre-litigation communications between Unidentified Respondents and Berger are privileged. The communications were (1) a communication between a prospective client and

counsel, which (2) was intended to be and was in fact kept confidential, and (3) made for the purpose of obtaining or providing legal advice. (*See, e.g.,* Exs. 2 ¶ 3 & 3 ¶ 3.) *See also U.S. v. Constr. Prod. Rsch.*, *Inc.*, 73 F.3d 464, 473 (2d Cir. 1996). The attorney-client privilege extends to communications with prospective clients. *Bolding v. Banner Bank*, 2021 WL 1530998, at *2 (W.D. Wash. Apr. 19, 2021) ("Communications from prospective clients with the aim of obtaining legal services are generally covered by the attorney-client privilege, even if the attorney is not ultimately retained," and as such, whether communications with prospective or putative class members are privileged "does not turn on whether they occurred before or after the class was certified or the individual had opted in."); *De La O v. Arnold-Williams*, 2007 WL 9717727, at *2–3 (E.D. Wash. March 8, 2007) (holding that "group meetings with attorneys preliminary to class action litigation are subject to attorney client privilege," and "the contents of such meetings are not discoverable in litigation with persons outside of the group"). [5]

### (1)   The communications were between a prospective client and counsel for the purpose of obtaining legal advice.

Courts regularly hold that pre-retention communications, such as those at issue here, between attorney and prospective client are privileged. For example, in *Barton v. U.S. Dist. Ct. for*

---

[5] *Accord Coe v. Cross-Lines Ret. Ctr., Inc.*, 2022 WL 17338289, at *5 (D. Kan. Nov. 30, 2022) (explaining that "[t]he practice of gathering confidential information from prospective clients via a questionnaire is fairly common in cases involving large numbers of clients" and holding that the questionnaires were protected under the attorney-client privilege regardless of "[w]hether or not a particular resident had actually retained [the law firm] at the time of submission"); *Vodak v. City of Chicago*, 2004 WL 783051, at *2–3 (N.D. Ill. Jan. 16, 2004) (completed questionnaires by prospective clients were privileged). Again, the answer is also no different in New Jersey, which expressly defines a "client" for purposes of the attorney-client privilege to include a person or entity that "**consults** a lawyer or the lawyer's representative for the purpose of retaining the lawyer or securing legal service or advice from him in his professional capacity." N.J. Stat. § 2A:84A-20(3) (emphasis added); *accord Herbert v. Haytaian*, 678 A.2d 1183, 1188 (N.J. Super. Ct. App. Div. 1996) ("The creation of an attorney-client relationship does not rest on whether the client ultimately decides not to retain the lawyer…").

*Cent. Dist. of Cal.*, 410 F.3d 1104, 1111 (9th Cir. 2005), the Ninth Circuit held that "[t]here is nothing anomalous about applying the privilege to such preliminary consultations." While the privilege would not apply where "where the lawyer has specifically stated that he would not represent the individual and in no way wanted to be involved in the dispute," it does apply where the lawyer "just made it clear that it did not represent the submitter *yet*." *Id.* (emphasis in original). In so holding, the Ninth Circuit was

> influenced by how fundamental the lawyer-client privilege is to the operation of an adversarial legal system. Potential clients must be able to tell their lawyers their private business without fear of disclosure, in order for their lawyers to obtain honest accounts on which they may base sound advice and skillful advocacy. There would be no room for confusion had the communication been in the traditional context of a potential client going into a lawyer's office and talking to the lawyer. The changes in law and technology that allow lawyers to solicit clients on the internet and receive communications from thousands of potential clients cheaply and quickly do not change the applicable principles.

*Id.* at 1112 (footnotes omitted). Thus, "[m]ost courts have acknowledged, as a general matter, that an attorney-client relationship exists if 'the party divulging confidences and secrets to an attorney believes that he is approaching the attorney in a professional capacity with the intent to secure legal advice.'" *First Hawaiian Bank v. Russell & Volkening, Inc.*, 861 F.Supp. 233, 238 (S.D.N.Y. 1994) (quoting *Bennett Silvershein Associates v. Furman*, 776 F.Supp. 800, 803 (S.D.N.Y.1991)).

In cases such as the one at hand, when several individuals filled out questionnaires or forms provided to an attorney in a potential class action lawsuit, "the dispositive factor typically is whether the putative class members were seeking legal advice or representation at the time they filled out the questionnaires." *Gates v. Rohm & Haas Co.*, Civ. A. No. 06-1743, 2006 WL 3420591, *3 (E.D. Pa. Nov. 22, 2006) (holding that the questionnaires at issue there were privileged). *See also, e.g., Bauman v. Jacobs Suchard, Inc.*, 136 F.R.D. 460 (N.D. Ill. 1990) (upholding a claim of privilege for responses to a letter and questionnaire); *Rosso, Johnson, Rosso*

& *Ebersold v. Superior Court*, 191 Cal. App. 3d 1514 (1987) (holding the names and addresses of women who responded to newspaper advertisement by law firm were protected by the attorney-client privilege even as to persons who never retained the law firm); *Connelly v. Dun & Bradstreet*, 96 F.R.D. 339 (D. Mass. 1982) (determination of privilege "hinges upon the client's belief that he is consulting a lawyer in that capacity and his manifested intention to seek professional legal advice") (holding questionnaires were privileged); *Don v. Unum Life Ins. Co. of Am.*, 2014 WL 12603207, at *2 (C.D. Cal. Nov. 4, 2014) (explaining that the Ninth Circuit has applied the attorney-client privilege "to prospective class members from whom lawyers were gathering information").

The situation here parallels that in *Barton*, where prospective plaintiffs filled out questionnaires with a check box requiring each individual to "disclaim a purpose of 'requesting legal advice,' and to acknowledge that the submitter is not 'forming an attorney client relationship' by sending in the answers." *Barton*, 410 F.3d at 1111. As the Ninth Circuit explained, "the box does not disclaim the purpose of 'securing legal service,'" and the questionnaire was "designed so that a person filling it out and submitting it is likely to think that he is requesting that the law firm include him in the class action mentioned at the beginning of the form." *Id.*

Likewise, here, the ClassAction.org website and its Terms of Use both expressly provide that Season 4 will forward users' information to the lawyers sponsoring the relevant submission forms so that their potential claims can be reviewed. (Ex. 1, at Ex. 1 ("If you received a spam text from a contact inviting you to download Robinhood's app, learn more about how legal action can help…. After you get in touch, ***a legal team will review your information*** …. The information submitted on this page ***will be forwarded to Berger Montague*** who has sponsored this investigation.") (emphasis added).) As such, potential claimants responding to the relevant

advertisement sponsored by Berger are assured that their information will be provided to Berger, their information kept confidential, and they are "likely to think that [they are] requesting that the law firm include [them] in the class action mentioned at the beginning of the form." *See Barton*, 410 F.3d at 111.

Unidentified Respondents approached Berger, in Berger's capacity as a law firm investigating Robinhood's spam refer-a-friend text messages, through ClassAction.org and provided information for the purpose of obtaining legal advice about a potential claim against Robinhood. The communications easily satisfy the first and third elements for establishing privilege.

### (2)    The communications were intended to be and were in fact kept confidential.

In establishing the second element, "[m]ore important than what the law firm intended," however, "is what the clients thought." *Barton*, 410 F.3d at 1107. Here, Season4 assured consumers that their responses to web forms would be kept confidential. Both Plaintiffs have stated that, when they filled out the form, they expected that the communication would be kept confidential. (Exs. 2 ¶ 4 & 3 ¶ 4.) Unidentified Respondents had the same expectations.

These expectations were reasonable where Season4 stated in the Terms[6] that "This Site forwards information you provide in connection with S4 Content to the lawyers, law firms, legal financial service providers, or other legal service providers as set forth in these Terms of Use and *keeps this information confidential*."[7] The Terms distinguish the information provided in connection with "S4 Content," i.e., webpages such as the one Unidentified Respondents viewed,

---

[6] Unidentified Respondents agreed to the Terms by submitting the information through the form. (*See* Ex. 1 at 12 (stating directly above blue "SUBMIT" button "By submitting this form, I agreed to the Terms . . ." and hyperlinking to the Terms of Use).)

[7] ClassAction.org, Terms of Use § 9, https://www.classaction.org/terms-of-use (emphasis added).

from "any other questions, comments, suggestions, ideas, feedback, or other information about the Site or the Services ('Submissions') provided by" users. While the Terms promise that the former is kept confidential, the other information is expressly "non-confidential."[8] Season4 repeats the promise that information provided when consumers fill out forms on the site will be kept confidential on the "About Us" page on ClassAction.org. [9] The page in June 2021 stated that "The only thing we will do with the information you provide us is send it to the attorneys we work with so that you can take legal action or get help. *Your information will never go to any other third party.*" (*Id.*, emphasis added.) Based on these representations, Unidentified Respondents certainly could not have expected that their responses would end up in the hands of Robinhood.

Based on these representations, Unidentified Respondents' expectations of confidentiality were reasonable. *See Vodak*, 2004 WL 783051, at *2 (holding questionnaires were privileged where the questionnaire "promises that the information provided will be "held in strict confidence and used only by the attorneys providing legal representation.").

### B.      Unidentified Respondents' Names and Contact Information Are Privileged.

"Courts in a few jurisdictions have supported the view that in unusual situations, particularly where so much is already known of the attorney-client relationship that to disclose a client's name will betray a confidential communication, the identity of a client may be treated as privileged information." 16 A.L.R.3d 1047, 1053; *Rosso, Johnson, Rosso & Ebersold v. Superior Ct.*, 191 Cal. App. 3d 1514, 1518 (1987); *State v. Bean*, 239 N.W.2d 556, 561 (Iowa 1976); *see also* 81 Am.Jur.2d, Witnesses, § 213, pp. 244–246. In *Rosso*, the court held that, "[b]ecause the people who are on the master list of clients have answered an advertisement directed to women

---

[8] *Id.*
[9]      Wayback     Machine,     ClassAction.org,     About     Us     (June     1,     2021), https://web.archive.org/web/20210601040007/https://www.classaction.org/about-us.

who have suffered injury arising from the use of a Dalkon Shield, revealing their names would reveal the nature of a medical problem." 191 Cal. App. 3d at 1514. Thus, "[s]ince disclosure [t]here reveals the problem of the client," it was "one of the exceptional cases where the identity of the client should be protected." *Id.* at 1519.

Here, the Unidentified Respondents' names and contact information are privileged for the same reason: revealing the names would reveal that the Unidentified Respondents contacted a law firm in response to a specific web page, i.e., because they received a spam text from a contact inviting them to download Robinhood's app and sought legal advice regarding legal action against Robinhood. The identities of the Unidentified Respondents are therefore privileged.

Requiring Season4 to reveal the identities of the Unidentified Respondents would also violate their privacy, especially for those Unidentified Respondents who may have determined not to proceed with a legal claim in order to protect their privacy. There is no reason to violate Unidentified Respondents' right to privacy where there is no compelling need for Robinhood to obtain this information. The Unidentified Respondents do not possess unique or relevant information and if Robinhood wanted to contact putative class members, Robinhood could do so because it already has email addresses and phone numbers for many class members. (Drake Decl. ¶ 7.)

### C.   The Subpoena Seeks Information Protected from Disclosure by the Attorney Work Product Privilege.

Relatedly, the documents and communications sought by the Subpoena are also privileged under the work product doctrine, and thus the Subpoena should be quashed for this additional reason. "While state law generally provides the rules of decision for questions of privilege in diversity actions, federal law governs the applicability of the work product doctrine in all actions in federal court." *Grinnell Corp. v. ITT Corp.*, 222 F.R.D. 74, 77 (S.D.N.Y. 2003) (internal

quotations omitted). The work product doctrine is codified in Fed. R. Civ. P. 26(b)(3), which provides that ordinarily "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent*)." Id.* "The work-product rule is designed to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy with an eye toward litigation, free from unnecessary intrusion by his adversaries." *United States Sec. & Exch. Comm'n v. Collector's Coffee Inc.*, 337 F.R.D. 70, 74 (S.D.N.Y. 2020) (internal quotations omitted), *objections overruled*, 2021 WL 391298 (S.D.N.Y. Feb. 4, 2021). Because attorneys often must rely on the assistance of investigators and other agents in preparation for litigation, the work product doctrine necessarily protects "material prepared by agents for the attorney as well as those prepared by the attorney himself." *Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, 341 F.R.D. 10, 13 (S.D.N.Y. 2022) (internal quotations omitted).

To qualify for protection under the work product doctrine, "it must be shown that the material at issue (1) is a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by his representative." *Id.* (internal quotations and brackets omitted). The work product doctrine covers both "fact work product," which includes "the result of a factual investigation," and "opinion work product," which includes "material that reveals the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative." *Collector's Coffee Inc.*, 337 F.R.D. at 74 (internal quotations omitted). Opinion work product is "virtually sacrosanct" *McGrath v. Nassau Cnty. Health Care Corp.*, 204 F.R.D. 240, 243 (E.D.N.Y. 2001), and is not discoverable, if ever, absent extraordinary circumstances. *See* Fed. R. Civ. P. 26(b)(3)(B) (courts "must protect against disclosure of the mental impressions,

conclusions, opinion, or legal theories of a party's attorney or other representative concerning the litigation"); *Hickman v. Taylor*, 329 U.S. 495, 510 (1947) ("Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney.").

Here, the Subpoena plainly seeks documents covered by the work product doctrine. That is, the Subpoena seeks: (1) the production of documents or tangible things; (2) that were prepared in anticipation of litigation against Defendant for its violations of Washington's Commercial Electronic Mail Act and Consumer Protection Act due to its practice of assisting in the transmission of unsolicited text messages; and (3) the documents sought, including the prospective clients' intake submissions, were prepared on the prospective clients' behalf by Season4, acting as an agent for Berger. (Ex. 1.)

Indeed, courts have made clear that the information sought by the Subpoena—including the identities of putative class members—goes to the heart of the interests protected by the work product doctrine by seeking materials that constitute opinion work product. *Don v. Unum Life Ins. Co. of Am.*, 2014 WL 12603207, at *2, is instructive. There, the defendant sought to compel production of communications between plaintiff's counsel and six unnamed putative class members. *Id.* at *1. The district court first held that communications between counsel and the putative class members were privileged under the attorney-client privilege, relying on the Ninth Circuit's holding in *Barton*, 410 F.3d 1104. *Id.* at *2. Importantly, the district court was then "equally if not more persuaded" that the communications were entitled to opinion work product protection, including "disclosure even of the identities of the six putative class members." *Id.* As the *Don* court further explained: "disclosure of the identity of the particular putative class members contacted by Plaintiff's counsel would open the door to revealing Plaintiff's counsel's strategy and

14

mindset as to why he might have chosen to interview or contact those individuals and not others; what counsel included in those communications; and perhaps what the insureds later disclosed to Plaintiff's counsel, if that occurred." *Id.*[10]

The same is true here. The documents and communications sought would reveal the evaluations, mental impressions, opinions, and legal strategy of Berger and Season4, including, *inter alia*, the identity of Unidentified Respondents that Berger chose to interview as well as which identity of putative class members counsel ultimately chose not to include as a named party. This information is squarely opinion work product, and as such, is "virtually sacrosanct" and not discoverable absent extraordinary circumstances. *See McGrath*, 204 F.R.D. at 243. As discussed below, the information sought by the Subpoena is utterly irrelevant to the underlying claims and defenses at issue in the litigation, and thus Robinhood falls *well* short of satisfying the heightened standard necessary to overcome the work product doctrine.

---

[10] *Accord Steele v. CVS Pharmacy, Inc.*, 2016 WL 1659317, at *2 (S.D.N.Y. Apr. 18, 2016) ("[T]he identities of third-party witnesses pertinent to this case have the potential to reveal counsel's opinions, thought processes or strategies and are, therefore, protected as work product.*"*); *Kelwin Inkwel, LLC v. PNC Merch. Servs. Co., L.P.*, 2020 WL 13077200, at *5 (E.D.N.Y. June 5, 2020) (discovery request asking "asking plaintiffs' counsel to go through the list of witnesses and identify which witnesses counsel chose to interview" is "clearly work product"); *United States v. Vepuri*, 2022 WL 3648184, at *2 (E.D. Pa. Aug. 24, 2022) ("The compilation of witness lists and other materials by or at the direction of counsel can constitute work product."); *Smith-Brown v. Ulta Beauty, Inc.*, 2019 WL 2644243, at *5 (N.D. Ill. June 27, 2019) (interrogatory "asking defendants to identify the people their lawyers selected to interview" seeks "to reveal their lawyers' mental processes," and is thus "an impermissible invasion of work product"); *Ferruza v. MTI Tech.*, 2002 WL 32344347, at *3 (C.D. Cal. June 13, 2002) ("Although the identity and location of witnesses that may have knowledge of any discoverable matter is not protected, the identity of witnesses interviewed by opposing counsel is protected" as work product and goes "to the heart of the work product rule."); *Seebeck v. Gen. Motors Corp.*, 1996 WL 742914, at *1–3 (N.D. Ga. May 17, 1996) (list of witnesses interviewed by the attorney was protected as work product because the decision as to which persons to interview was based on legal work and analysis).

Here, correspondence between Berger and Season4 regarding the web page describing the Robinhood spam text investigation were clearly created by Berger or Season4 (at Berger's request) as part of Berger's efforts to find named plaintiffs "in anticipation of litigation." Berger's directions to Season4 reflect Berger's assessment of Plaintiffs' and Unidentified Respondents' claims that were later asserted by Plaintiffs and Berger's litigation strategies. (Drake Decl. ¶ 8.) By targeting Berger's service provider, Robinhood is improperly directing discovery at opposing counsel. *U.S. v. Yonkers Bd. Of Educ.*, 946 F.2d 180, 185 (2d Cir. 1991) (discovery directed at opposing counsel is "disfavored"). Thus, Robinhood improperly seeks an advantage in the litigation that would be gained "on wits borrowed from the adversary." *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986). Robinhood is not entitled to this information, and Berger's interests in the confidentiality of its work product would be harmed if the Court does not quash the Subpoena.

## VI.   THE SUBPOENA MUST BE QUASHED BECAUSE IT SEEKS DISCLOSURE OF OTHER PROTECTED MATTERS.

Separately, even absent the attorney-client privilege and the work product doctrine that apply to the documents and communications sought by the Subpoena, the Subpoena must be quashed because it also seeks sensitive information that would invade Unidentified Respondents' reasonable expectation of privacy when submitting information for the purpose of seeking legal advice. Fed. R. Civ. P. 45 (d)(3)(A)(iii) requires that the Court quash or modify a subpoena that requires disclosure of not only privileged materials, but also "other protected matter." *Id.* It is well established that privacy interests may constitute "other protected matter" for purposes of Rule 45. *See Jordan v. Comm'r, Mississippi Dep't of Corr.*, 947 F.3d 1322, 1336–37 (11th Cir. 2020) ("[F]ederal courts have recognized that privacy interests and confidentiality concerns can factor into a decision whether to quash a subpoena under Rule 45, even though the information requested

by the subpoena is not subject to a federal evidentiary privilege.") (collecting cases).[11] Indeed, an individual's right to privacy is enshrined in the Constitution of the State of Washington, which provides that "[n]o person shall be disturbed in his private affairs … without authority of law." Wash. Const. art. I, § 7.

Here, Season4, Berger, and the Unidentified Respondents had reasonable expectations of privacy that the documents and communications sought by the Subpoena would remain confidential. Indeed, the submission forms were created specifically so that the prospective clients could connect with and seek legal advice from Berger, with the expectation that their personal and confidential information would not be made public or made available to Robinhood—the very party whose actions prompted the prospective clients to seek legal advice in the first place. Given that the Rules of Professional Conduct generally prohibit lawyers from using or revealing information learned from a prospective client "[e]ven when no client-lawyer relationship ensues," Wash. RPC 1.18, prospective clients had a reasonable expectation of privacy in their communications for the purpose of seeking to be represented in the underlying action.

The need to protect the communications and documents relating to prospective clients seeking legal advice and communications with counsel raise broader public interest and privacy concerns that must be protected from disclosure, either as specifically privileged or as an "other protected matter" under Rule 45(d)(3)(A)(iii). As a matter of public policy, courts have recognized the need to protect communications made by prospective clients seeking legal advice in order to

---

[11] *Accord S. California Hous. Rts. Ctr. v. K3 Holdings, LLC*, 2022 WL 17333390, at *9 (C.D. Cal. Oct. 18, 2022) ("Federal courts ordinarily recognize a constitutionally-based right of privacy that can be raised in response to discovery requests."); *Bhatt v. Lalit Patel Physician P.C.*, 2020 WL 13048694, at *3 (E.D.N.Y. Oct. 19, 2020) ("[t]ax returns constitute 'other protected matter'" under Rule 45 due to "the private nature of the sensitive information contained therein"); *Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 928 (7th Cir. 2004) (affirming district court's order quashing subpoena seeking medical records based on privacy concerns of patients).

encourage "full and frank disclosures," *see Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 108, (2009), and the need to protect the "zone of privacy" for attorneys and their agents to "prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by [an attorney's] adversaries." *See New York Times Co. v. United States Dep't of Just.*, 939 F.3d 479, 489 (2d Cir. 2019). Whether specifically privileged or viewed as "other protected matter," the documents and communications sought by the Subpoena go to the heart of these very concerns.

## VII.   CONCLUSION.

Based on the foregoing, Berger, on behalf of the Unidentified Respondents and itself, respectfully requests that the Court quash the Subpoena.


Dated: March 21, 2023                                   /s/ E. Michelle Drake
                                                        E. Michelle Drake*
                                                        BERGER MONTAGUE PC
                                                        1229 Tyler Street NE, Suite 205
                                                        Minneapolis, MN 55413
                                                        Tel: (612) 594-5933
                                                        Fax: (612) 584-4470
                                                        Email: emdrake@bm.net
                                                        *pro hac vice pending*

                                                        *Movant Counsel*